UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | Case Number: 21-cr-714-CKK |
| QUINCY LABUAVE, : | |
| : | |
| Defendant. : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Memorandum in Aid of Sentencing as the court prepares to impose a sentence on the defendant, Quincy LaBauve, in this case.  On September 5, 2023, while serving a Mississippi state sentence related to the sexual abuse and exploitation of a child, defendant LaBuave entered a guilty plea to one count of Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2).  For the reasons below, the United States submits that a sentence of 300 months of incarceration, a total of twenty-five years, followed by a lifetime of supervised release, is "sufficient, but not greater than necessary" to comply with the purposes of sentencing.  Further, in light of the lengthy term of incarceration that LaBuave is serving in Mississippi, the United States would not oppose a request by the defendant to impose a sentence concurrent with his existing state sentence.

### BACKGROUND

On November 15, 2018, Quincy LaBuave was sentenced to a 40-year term of incarceration after being convicted of two counts of Exploitation of a Child and one count of Sexual Battery in Harrison County, Mississippi.  The conduct in the Mississippi case involved the defendant "engaging in the act of sexual penetration, to wit: by inserting his penis into the mouth of L.N." and also involved

1

a "visual depiction of an actual child engaging in sexually explicit conduct."  Presentence Investigation Report, ECF No. 23, 12/8/23, at 10.  Since that time, LaBauve has been continuously incarcerated.

Rather than being chastised after his 2018 conviction and sentence, less than two years later LaBuave used a contraband cell phone while in jail to actively seek out the same type of material that landed him in jail in the first place.  In a roughly week-long chat with an undercover law enforcement agent, LaBauve distributed child pornography and actively encouraged the undercover officer to sexually abuse his purported 8-year-old daughter, while also asking him to live-stream the abuse so that LaBauve could watch a child being raped from his cell.  The facts in this case speak for themselves.  Defendant LaBauve has demonstrated that no child is safe if he is ever permitted in the community again and, quite frankly, it is not at all clear that even the four walls of a prison cell can keep children safe from his predation.

The investigation into LaBauve's conduct in this case began on February 6, 2020, when an undercover FBI Task Force Officer ("TFO") based in Washington D.C. accessed a private group within the social media platform Kik. Individuals participating in the private Kik group regularly traded child pornography and discussed the sexual abuse and exploitation of children. Upon entering the private group, new members received a message indicating they needed to actively share child sex abuse material or they would be removed from the group.

After accessing the group, the TFO received a private message from an individual with the username ZEROFOOLXXX Not Telling, who was later identified as defendant LaBauve. LaBauve told the TFO that he was incarcerated on state charges related to the exploitation of children, specifically that he had sexually abused his daughters.  He also sent photos to the TFO to verify the fact that he was incarcerated, showing his prison uniform in a "real time" picture as requested by the

TFO. When asked how he had possession of a phone while incarcerated, LaBauve stated that gangs in the jail would smuggle them in and would sell them to other inmates at inflated prices.

During the course of the Kik chat, the TFO indicated that he was the father of an 8-year-old girl and that he would sexually abuse his purported daughter while live-streaming the abuse. During an exchange on February 6, 2020, LaBauve stated that he "need to see that." Over the course of more than a week, LaBauve and the TFO continually discussed how to arrange an opportunity for LaBauve to view a live-stream video so that LaBauve could watch the TFO sexually abusing his daughter. On February 13, 2020, the following exchange occurred:

> TFO:   Lol so true, and while we are on that topic lol what do you want to see me do with her
>
> Def:   Hmm so many things cross my mind.
>
> Def:   Lol
>
> Def:   Ride your cock. Stuck it with a big smiling facial
>
> Def:   Suck it and get facialed
>
> Def:   Of course daddy's gonna get his foreplay in right?
>
> Def:   What does she like to do?

LaBauve continued to engage with the TFO and, on February 14, 2020, the following exchange occurred:

> Def:   I'll be happy to see (what's your daughters name) drenched in warm semen
>
> TFO:   Emma, I will spray her for you!
>
> TFO:   Is 830 pm Tuesday good?
>
> TFO:   Are you in a cell by yourself?
>
> Def:   If I weren't here I would come and join ya. Double down on her pretty lil body.
>
> Def:   Double cumshot for Emma

During the course of the communications, which spanned from February 6, 2020, to February 18, 2020, the defendant asked if the TFO could help him find others, either from that group or from other online groups, who would be willing to share child pornography with him. The defendant indicated that he had previously met a Kik user and that they would "live chat" while abusing their victims.

Between February 6, 2020, and February 18, 2020, the defendant sent approximately 10 images to the TFO depicting the sexual exploitation of children.[1]  For example, on February 6, 2020, the defendant sent the TFO a video, 30 seconds in length, depicting an adult male holding his penis over the face of a young girl who has her mouth open and who makes a guttural noise as the penis shakes above her.  The young girl, who is nude from the waist up, appears to have recently lost her front baby teeth.  The video shows the penis ejaculating into the little girl's eye, before the adult man uses his hand to force his penis into the child's mouth.  On February 7, 2020, he then sent a video depicting an adult male penetrating the vagina of a prepubescent girl with his penis.  On February 8, 2020, the defendant sent another video depicting an adult male penis being placed inside the mouth of a prepubescent girl.

After identifying LaBauve as an inmate in the Mississippi Department of Corrections ("DOC") system, the TFO in Washington, D.C. contacted the FBI field office in Mississippi for assistance. In coordination with the Mississippi DOC, the TFO told the defendant that his purported daughter would be with him the night of February 18, 2020, if the defendant was still interested in viewing a "live show." The defendant told the TFO that he was still interested, and the two discussed the logistics of how the TFO could sexually abuse his purported daughter, record the abuse, and live-stream it for LaBauve to watch.

---

[1] At the court's request, the United States will make the child sexual abuse material (CSAM) distributed by the defendant available in advance of sentencing.

On February 18, 2020, DOC officers conducted a search of LaBauve's cell, and recovered two cellular phones. The forensic analysis of one of those phones revealed the chats exchanged between LaBauve and the TFO, as well as at least 78 additional images depicting the sexual abuse of very young of children. These images included multiple still images and at least one video of prepubescent girls being anally penetrated by an adult penis; at least one image of an adult penis vaginally penetrating a prepubescent girl; and numerous images of young girls, including prepubescent girls, having an adult penis forced into their mouths. The images also include a series of images of a young girl who is looking in the direction of the camera, ostensibly smiling, as an adult penis ejaculates on her chest. The smile appears to be forced as the hand of the adult male grips the top of her head and holds her face in the direction of the camera.

On December 7, 2021, LaBauve was charged in a seven-count indictment with one count of Attempted Production of Child Pornography, in violation of 18 U.S.C. § 2251(a), (e), five counts of Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2), and one count of Commission of a Felony Offense by an Individual Required to Register as a Sex Offender, in violation of 18 U.S.C. § 2260A. On July 11, 2023, after being brought before the court on a writ, the defendant had his initial appearance in the District of Columbia. On September 5, 2023, pursuant to a written plea agreement, the defendant entered a plea of guilty to one count of Distribution of Child Pornography. Due to his prior convictions, the defendant is subject to the enhanced penalties described in § 2252(b)(1), with a mandatory minimum of 15 years of incarceration. Sentencing is scheduled for January 18, 2024.

## DISCUSSION AND RECOMMENDATION

### I.   Generally Applicable Legal Principles

In determining an appropriate sentence, a district court should begin all sentencing proceedings by correctly calculating the applicable guidelines range. *See United States v. Gall*, 552

U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."). Then, after giving both parties an opportunity to argue for an appropriate sentence, the district court should consider each of the applicable factors set forth in 18 U.S.C. § 3553(a). *Id.* These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the kinds of sentences available (18 U.S.C. § 3553(a)(3)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); the need to avoid unwarranted sentencing disparities (18 U.S.C. § 3553(a)(6)); and the need to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7)).

## II.    Applicable Guidelines Range

Distribution of Child Pornography is governed by U.S.S.G. § 2G2.2. Although the written plea agreement initially contemplated that § 2G2.1 would be the applicable Guideline due to the cross reference described at § 2G2.2(c)(1), the United States accepts the position of the Probation Office that, in this specific case, the higher offense level is produced by § 2G2.2. Presentence Investigation Report, ECF No. 23, 12/8/23, at 8, n.5. Thus, as calculated in the Presentence Investigation Report, the base level is 22. There a two-level increase because a prepubescent minor was depicted, § 2G2.2(b)(2); a two-level increase for distribution of child pornography, § 2G2.2(b)(3;) a four-level increase for the depiction of sadomasochistic conduct, § 2G2.2(b)(4); a five-level increase for a pattern of activity involving the sexual abuse or exploitation of a minor, § 2G2.2(b)(5); a two-level increase for use of a computer, § 2G2.2(b)(6); and a four level increase for between 300-600 images, § 2G2.2(b)(7)(c). Therefore, the adjusted offense level is 41. As part of the plea, the United States

agreed to recommend a three-level decrease for the defendant's acceptance of responsibility, §§3E1.1(a) and (b), resulting in a total offense level of at least 38. Further, as part of the plea, the United States agreed to cap its allocution at no more than twenty-five years of incarceration.

Based on the defendant's prior convictions his criminal history category is III. A total offense level of 38 and a criminal history category of III, makes Defendant's advisory sentencing guidelines range 262-327 months' imprisonment.

### III. Government's Sentencing Recommendation

Here, the United States recommends a sentence of 300 months of incarceration, the mid-range of the defendant's sentencing guidelines range, to be followed by a lifetime of supervised release. In the event that the defendant requests that his sentence in this case be run concurrent to his sentence in Mississippi, the United States would not oppose such a request. Given the gravity of the defendant's crime and the significant danger that he poses to children both online and in person, this sentence balances the factors outlined in § 3553 and is no more than necessary to effectuate the purposes of sentencing. The sentence also ensures that, when the defendant is ultimately released, his future danger to the community will be minimized by a lifetime of supervision.

#### A. Nature and Circumstances of the Offense

The nature and circumstances of LaBauve's offense are horrendous and demonstrate his total disregard for the wellbeing of children, as well as his willingness to seek his own sexual gratification at the expense of children who are being raped and abused. In February of 2020 – while incarcerated for convictions involving child sex crimes – defendant LaBauve used a contraband cell phone to engage with a Washington, D.C. based TFO on social media, actively seeking out images of child sexual abuse material. During the chat exchange, he encouraged the TFO to rape his own daughter, described specific sexual acts that he wanted to see inflicted on the child, and set up a specific time where he was supposed watch the live-streamed rape of that child.

In the course of his chats, the defendant also distributed child pornography to someone who he had every reason to believe was abusing a child, only further encouraging and normalizing the sexual abuse of children.  Children depicted in images and videos depicting their sexual abuse are traumatized and victimized in the worst way imaginable at the time the images were created, and they are re-victimized each time an individual, like the defendant, views the images for their own sexual gratification. As explained by the Sixth Circuit in a child pornography case:

> ...we have numerous victims in a case like this, not one victim. Every image of a child, every image of a non-adult engaged in any type of sexual activity or any type of pose without clothing or any type of exploitation constitutes an additional case of victimizing a child. Without a demand for that type of information and that type of viewing from persons like this defendant, we don't know how many child abuse cases we could prevent. And as long as there is a demand to purchase images of child pornography, there is going to be an unending stream of child abuse of…children who are forced into these roles.
>
> ...every image has a child who has been exploited and abused, and that is the concern I have. It is the concern that I have when people are engaged in serially doing this, the effect it has on children throughout the world and the effect it has on their future lives.

*See United States v. Miller*, 665 F.3d 114, 121-122 (6th Cir. 2011) (quoting the district court) (rejecting an attack on the child pornography sentencing guidelines and highlighting the grave harm caused to the victims depicted in child pornography images and the evidence that traffickers and possessors of child pornography are the impetus for the creation of more sexual abuse of minors).

The nature and circumstances of LaBauve's crime weigh in favor of a lengthy sentence that will incapacitate him by removing him from the community for a significant period of time and will ensure his supervision when he is eventually released.  A lesser sentence will only reduce the period of time that children in the community are provided some measure of protection from the danger that LaBuave poses.

B.      **History and Characteristics of the Defendant**

Defendant LaBauve has now pled guilty for a second time to committing sex crimes against children. On November 15, 2018, Quincy LaBuave was sentenced to a 40-year term of incarceration after being convicted of two counts of Exploitation of a Child and one count of Sexual Battery in Harrison County, Mississippi. The conduct in the Mississippi case involved the defendant sexually abusing a child by "engaging in the act of sexual penetration, to wit: by inserting his penis into the mouth of L.N." and also involved a "visual depiction of an actual child engaging in sexually explicit conduct." Presentence Investigation Report, ECF No. 23, 12/8/23, at 10. While repeat offenders are not out of the ordinary, what makes this second offense so aberrant is that LaBuave committed it less than two years after being sentenced and did so *while incarcerated* for a sexual offense against a child.

It is impossible to understate how serious the defendant's criminal history is. Committing a second child sex offense while incarcerated for the first demonstrates that even very weighty consequences – incarceration, sex offender registration, social approbation – did nothing to slow LaBauve down or to check him from harming a child a second time. He has demonstrated that he is a man who cannot be trusted in the community and his sentence should aim to ensure that he is removed from the community for many years to come.

While LaBauve's prior criminal history is disturbing, it should not be at all shocking given the high rate of recidivism for sex offenders. *See Lombard v. United States*, 44 F. Supp. 3d 14, 26 (D.D.C. 2014) (noting that the lower court's concerns about recidivism was supported by substantial authority (citing *Smith v. Doe,* 538 U.S. 84, 103, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) ("The risk of recidivism posed by sex offenders is frightening and high.") (citations omitted); *McKune v. Lile,* 536 U.S. 24, 33, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002) (noting that "[w]hen convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested

for a new rape or sexual assault");*United States v. Irey,* 612 F.3d 1160, 1214 (11th Cir.2010) ("[T]he threat of recidivism by a pedophile who has sexually abused a child is appalling.") (citation and quotation marks omitted); *United States v. Allison,* 447 F.3d 402, 405–06 (5th Cir.2006) ("Congress explicitly recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders.")); *see also United States v. Allison*, 447 F.3d 402, 405-406 (5th Cir. 2006) (Congress explicitly recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders). Indeed, this defendant stands in front of this Court as a recidivist – having been previously convicted of a child sexual exploitation offense.

As Judge Posner explained:

We need evidence-driven law just as we need evidence-driven medicine. Statistical analysis of sex crimes has shown that the best predictor of recidivism is not deportment at an interview but sexual interest in children. R. Karl Hanson, Kelley E. Morton & Andrew J.R. Harris, "Sexual Offender Recidivism Risk: What We Know and What We Need to Know," 989 Annals of the N.Y. Academy of Sciences 154, 157 (2003) (tab.1). Some studies show a high rate of recidivism among pedophilic sex offenders generally, ranging from 10 percent to 50 percent. Ryan C.W. Hall & Richard C.W. Hall, "A Profile of Pedophilia: Definition, Characteristics of Offenders, Recidivism, Treatment Outcomes, and Forensic Issues," 82 Mayo Clinic Proceedings 457, 467 (2007). Another study found that only 6.8 percent of consumers of child pornography had been charged with a new child-pornography offense within 4 years but that the percentage rose to 9.5 percent within 6 years. Angela W. Eke, Michael C. Seto & Jennette Williams, "Examining the Criminal History and Future Offending of Child Pornography Offenders: An Extended Prospective Follow-up Study," Law & Human Behavior, Nov. 19, 2010 (tab.1), www.springerlink.com/content/h4616862621x8616/ (visited June 23, 2011).

*United States v. Garthus*, 552 F.3d 715, 720 (7th Cir. 2011).

Consistent with the high rates of recidivism among sex offenders, LaBauve has already found an opportunity to recidivate, despite being incarcerated at the time he did so. A period of 300 months of incarceration, followed by a lifetime of supervised release, will limit – although not necessarily eliminate – LaBuave's opportunities to commit further sex offenses against children and will provide some measure of protection to the community for the remainder of his lifetime.

10

### C. Seriousness of the Offense, Promotion of Respect for the Law, and Just Punishment for the Offense

Child pornography offenses are extremely serious because they result in perpetual harm to the most vulnerable victims, while simultaneously validating and normalizing the sexual exploitation of children. Courts across the country have recognized this:

> There can be no keener revelation of a society's soul than the way in which it treats its children. Given the current statistics surrounding child pornography, we are living in a country that is losing its soul.
>
> Child pornography is a vile, heinous crime. Mention the term to your average American and he responds with immediate disgust and a sense of unease. However, once it enters the legal system, child pornography undergoes sterilization. The sterilization goes far beyond properly removing emotion from sentencing decisions. Images are described in the most clinical sense. Victims all too often remain nameless. The only emotions on display are those of the defendants, sorry that their actions were discovered by law enforcement.

*United States v. Cunningham*, 680 F.Supp.2d 844, 847 (N.D. Ohio, 2010), *affirmed* 669 F.3d 723 (6th Cir. 2012).[2]

When enacting mandatory minimum penalties for those who produce and traffic in the sexual abuse and exploitation of children, Congress similarly described the evil of child pornography:

> [W]here children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years . . . [The] existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children . . . it inflames the desires of . . . pedophiles . . . who prey on children, thereby increasing the creation of and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials.

---

[2] *See also In re Amy Unknown*, 636 F.3d 190, 201 n.12 (5th Cir. 2011) (*citing United States v. Norris*, 159 F.3d 926 (5th Cir. 1998) (describing how the distribution of child pornography creates a marketplace for images of children, perpetuating abuse); *United States v. Yuknavich*, 419 F.3d 1302, 1310 (11th Cir. 2005); *United States v. Grosenheider*, 200 F.3d 321, 332-34 (5th Cir. 2000).

Child Pornography Prevention Act of 1996, Pub.L. No. 104-208, § 121, 110 Stat. 3009, 3009-27 (1996).

There is perhaps no greater invasion of privacy than that caused by the dissemination of child pornography. With a click of the button on a camera, the sexual abuse of these children is memorialized forever. It is terrible enough that a child must live with the memory of his or her initial abuse. It is hard to even comprehend how that child could then learn to cope with the fact that strangers everywhere are using the worst moments of that child's life to sexually gratify themselves and that he or she can do nothing to stop them from continuing to do so. The only recourse that these children have is the strong enforcement of the laws that hold these offenders accountable for the tremendous damage they have inflicted upon countless child victims.

Distributors of child pornography, like the defendant, create a market and demand for materials depicting the sexual abuse and exploitation of real children. They contribute to the cycle of abuse and are in part responsible for the harm suffered by the children used to produce the materials in their collections. *See United States v. Goff,* 501 F.3d 250, 259-260 (3d Cir. 2007) ("Children are exploited, molested, and raped for the prurient pleasure of [defendant] and others who support suppliers of child pornography"). In *United States v. Goldberg,* the Seventh Circuit stated:

> The district judge was influenced by the erroneous belief that a sentence affects only the life of the criminal and not the lives of his victims. Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded-both consumed himself and disseminated to others. The greater the customer demand for child pornography, the more that will be produced. [Citations omitted].

491 F.3d 668, 672 (7th Cir. 2007). In other words, even if consumers of child pornography do not themselves molest children, their actions directly contribute to the abuse of children.

Here, the defendant made the conscious decision to distribute child pornography to someone who he believed was sexually abusing his own child and a lengthy period of incarceration is necessary

to promote respect for the law, ensure just punishment, and to reflect the seriousness of the defendant's offense.

### D. Adequate Deterrence and Protection of the Public

The trafficking of child pornography endangers the public by encouraging the rape, violence, and abuse of children. In *United States v. Miller*, the Fifth Circuit stated:

> [R]eal children are being abused and violated when pornographic images are made. Without a market for such images, and without a strong appetite for more and more images exhibited by [the defendant] and similarly situated defendants, there would be far fewer children who are injured and criminally assaulted in this way. If a handful of pornographic images taken twenty years ago were sufficient to satisfy the perverse desires of those who possess and traffic in child pornography, we would not have the huge industry that exists internationally today.

665 F.3d 114, 123 (5th Cir. 2011). The importance of deterrence with respect to child pornography offenses is well-established. Serious penalties for child pornography offenders decrease the number of participants in the market, which in turn decreases the need for its production:

> The greater the customer demand for child pornography, the more that will be produced. Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so more will be produced.

*Goldberg*, 491 F.3d at 672; *see also Osbourne v. Ohio*, 495 U.S. 102, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand"); *Goff*, 501 F.3d at 261 ("Deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing."); *United States v. Barevich*, 445 F.3d 956, 959 (7th Cir. 2006) ("Transporting and receiving child pornography increases market demand. The greater concern under the Guidelines is for the welfare of these

exploited children. The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it.").

Here, the defendant's sentence should be sufficient to deter not only him from reoffending in the future, but also to deter the criminal conduct of others who engage in, or contemplate engaging in, the trafficking of child sexual abuse material. The government's recommended sentence of 300 months' incarceration, follow by a lifetime of supervised release, serves this purpose.

### E. Kinds of Sentences Available and the Need to Avoid Unwarranted Sentencing Disparities

Section 3553(a)(6) requires courts to consider the need to avoid unwarranted sentencing disparities among defendants "with similar records who have been found guilty of similar conduct." However, it "does not require the district court to avoid sentencing disparities between [ ] defendants who might not be similarly situated." *United States v. Mattea*, 895 F.3d 762, 768 (D.C. Cir. 2018) (quoting *United States v. Guillermo Balleza*, 613 F.3d 432, 435 (5th Cir. 2010). Here, the government's recommended sentence is within the Sentencing Guidelines range; per the plea agreement, both parties have agreed that this range is reasonable.

### IV. The Victims are Entitled to Restitution

18 U.S.C. § 2259 directs that, "notwithstanding section 3663 or 3663A, and in addition to any other civil or criminal penalty authorized by law, the court shall order restitution for any offenses under this chapter. 18 U.S.C. § 2259(a); *United States v. Hite*, 113 F. Supp. 3d 91, 94 (D.D.C. 2015) ("Pursuant to 18 U.S.C. § 2259, the victims of certain federal crimes, including possession of child pornography, are entitled to mandatory restitution."). Restitution was defined to include "the full amount of the victim's losses," which includes any costs incurred by the victim for:

(A) Medical services relating to physical, psychiatric, or psychological care;
(B) Physical and occupational therapy or rehabilitation;
(C) Necessary transportation, temporary housing, and child care expenses;
(D) Lost income;

14

>(E) Attorneys' fees, as well as other costs incurred; and
>(F) Any other losses suffered by the victim as a proximate result of the offense.

*United States v. Hite*, 113 F. Supp. 3d 91, 94 (D.D.C. 2015); 18 U.S.C. § 2259(b)(3). The Court may not decline to issue an order under this section because of the economic circumstances of the defendant. 18 U.S.C. § 2259(B)(i).

In *Paroline v. United States*, 134 S. Ct. 1740 (2014), the United States Supreme Court faced a circuit split over the interpretation of 18 U.S.C. § 2259, specifically over "how to determine the amount of restitution a possessor of child pornography must pay to the victim whose childhood abuse appears in the pornographic materials possessed." *Paroline*, 134 S. Ct. at 1716. In *Paroline*, the defendant possessed two images of the victim who was seeking restitution. The Court's answer to this question involved three steps.

First, *Paroline* held that, because the statute defined a "victim" as someone "harmed as a result" of the offense, restitution under § 2259 was proper "only to the extent the defendant's offense proximately caused a victim's losses." *Id*. at 1722.

Second, the Court held that "proximate cause" under § 2259 did not require strict but-for causation. *Id*. at 1726-27. Recognizing that under the circumstances of most child pornography possession cases – where losses resulted from harm caused by the trafficking of a victim's images by numerous "geographically and temporally distant offenders acting independently, and with whom the defendant had no contact," *id*. at 1725, the Court held:

> In this special context, where it can be shown that a defendant possessed a victim's images and that a victim had outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses.

*Id*. at 1727. The Court made clear that, where the victim's losses are "the product of the acts of thousands of offenders," a restitution order should not be "too severe" but must not be merely "a

token or nominal amount." *Id.* That is, in part, because a restitution order under § 2259 serves "twin goals," the first being to "help[] the victim achieve eventual restitution for all her child-pornography losses" and second to "impress[] upon offenders the fact that child pornography crimes, even simple possession, affect real victims." *Id.*

Third, the Court provided sentencing courts the following guidance for how to determine the proper amount of restitution under this standard. *Id*. The Court noted that a sentencing court's goal should be to assess "the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses," taking into account any "available evidence." *Id*. at 1727-28. The Court emphasized that there is no "precise mathematical inquiry" governing this determination and that district courts must exercise "discretion and sound judgment" in fashioning restitution awards. *Id*. at 1728. The Court suggested several factors to be considered, including: (1) the number of defendants convicted of possessing the victim's images; (2) the number of future offenders likely to be caught and convicted; (3) whether the defendant had any role in the initial production of the images; (4) whether the defendant reproduced or distributed the images; (5) how many images the defendant possessed; and (6) "other facts relevant to the defendant's relative causal role." *Id*. "These factors need not be converted into a rigid formula, especially if doing so would result in trivial restitution orders. They should rather serve as rough guideposts for determining an amount that fits the offense." *Id*.

Congress has since amended § 2259 to both codify *Paroline*'s basic approach and to set a restitution floor of $3,000. *See* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299, 132 Stat. 4383 (December 7, 2018). Prior to sentencing, the United States may submit restitution requests on behalf of identified victims and will do so under separate cover. Pursuant to 18 U.S.C. § 2259, each of the defendant's victims is entitled to restitution for

their losses as a result of the defendant either possessing or distributing their images. Following the sentencing hearing the United States will file a proposed restitution order with the Court.

## CONCLUSION

The United States submits that a sentence of 300 months imprisonment, to be followed by a lifetime of supervised release, is "sufficient, but not greater than necessary to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). Such a sentence is necessary because the defendant is a repeat offender who has demonstrated that his own sexual gratification is far more important to him than the children who were raped and abused for his amusement, and that he is willing to continue seeking that gratification in spite of the consequences. A lesser sentence would be inadequate.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:     */s/ Jocelyn Bond*
Jocelyn Bond
DC Bar #1008904
Assistant United States Attorney
United States Attorney's Office
601 D Street, NW
Washington, DC 20530
Phone: (202) 809-0793